

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2013 APR -1 AM 9: 11

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

In the Matter of the Marriage of )    No. 68507-4-I

SARA STEPHENSON,

Appellant,

and

SHATA STEPHENSON,             UNPUBLISHED OPINION

Respondent.               FILED: April 1, 2013

VERELLEN, J. — Sara Stephenson appeals the trial court's order of child support, arguing the court did not follow the statutory scheme in chapter 26.19 RCW. Where parents have a 50/50 shared residential schedule, the trial court is required to make the standard child support calculation and then consider any requested deviation, expressly analyzing whether a downward residential deviation would leave the household receiving the reduced payment with insufficient funds to meet the needs of the children. The trial court consulted the child support economic table as required by the statute, and then reduced the transfer payment from Shata to Sara to account for Shata's equal residential time. But the court recited that it was not applying the standard calculation, and that the reduced transfer payment did not constitute a deviation. There is no indication that the trial court considered whether the reduced transfer amount would leave Sara's household with insufficient funds to meet the needs of the children.

Because the trial court failed to conduct the appropriate analysis under RCW 26.19.075(1)(d), we vacate the order of child support and remand for further proceedings consistent with this opinion.

## FACTS

Sara and Shata Stephenson divorced after nine years of marriage. Their two children were eight and ten years old at the time of trial. The parties agreed to a shared residential schedule, with the children spending equal amounts of time in each parent's household.

Because of the shared residential schedule, Shata argued the basic support obligation should be shared between the parties, with the monthly transfer amount set so that each party paid half of the basic support obligation. Because he and Sara have equivalent residential burdens, Shata contended it was "not possible to identify an obligor or obligee for child support purposes."[1] Sara argued that the court should not deviate from the basic support obligation, as it would leave her with insufficient funds to meet the basic needs of the two children.

For purposes of the child support transfer payment, the court imputed income of $38,388 to Sara and income of $123,895 to Shata. Based on the child support schedule in RCW 26.19.020, the court determined the basic child support obligation was $1,866.00 ($933.00 for each of the two children). Based on the parties' income, the court determined Shata's proportional share of the child support obligation was 75 percent, for a total of $1,399.50, and Sara's 25 percent, for a total of $466.50.

---

[1] Clerk's Papers at 40.

The court identified Shata as the obligor on the monthly child support transfer payments. Instead of ordering a monthly transfer payment by Shata to Sara of $933 (i.e., the standard calculation, which is the difference between his proportional share and Sara's proportional share), the court determined Shata owed a total monthly transfer payment of $500. The court explicitly stated its order was not a deviation from the standard calculation. Rather, the court concluded the standard calculation did not apply, so "the court's equal allocation of the [b]asic [s]upport [o]bligation between the two households does not constitute a deviation."[2] The court did not enter written findings or conclusions. There is no indication in the record that the trial court considered the impact of the reduced transfer payment on Sara's ability to meet the needs of the two children.

Sara appeals the trial court's order of child support, contending the court's analysis amounted to an improper deviation from the standard support calculation.

### DISCUSSION

We review a trial court's decision on an order of child support for an abuse of discretion.[3] A trial court abuses its discretion if it the decision rests on unreasonable or untenable grounds.[4] A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis.[5]

---

[2] Clerk's Papers at 77.

[3] State ex rel. M.M.G. v. Graham, 159 Wn.2d 623, 632, 152 P.3d 1005 (2007).

[4] Id. at 633.

[5] Dix v. ICT Group, Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

3

*Deviation from the Standard Calculation*

Chapter 26.19 RCW directs a specific process a trial court must follow before entering an order of child support. The court must first apply the child support schedule.[6] The court begins by setting the basic child support obligation, which is the "monthly child support obligation determined from the economic table based on the parties' combined monthly net income and the number of children for whom support is owed."[7] The economic table is presumptive for combined monthly incomes of $12,000 or less.[8]

The court must allocate the child support obligation between the parents based on each parent's share of the combined monthly income.[9] The court then determines the "standard calculation," which is the presumptive amount of child support owed by the obligor parent to the obligee parent under the child support schedule, before consideration of either an upward or downward deviation.[10]

The court next determines whether it is appropriate to deviate from the standard calculation.[11] The trial court may exercise its discretion and deviate from the standard calculation based on a variety of factors, including the children's residential schedule.[12]

---

[6] RCW 26.19.035(1)(c) ("The child support schedule shall be applied . . . . [i]n all proceedings in which child support is determined.").

[7] RCW 26.19.011(1); see also RCW 26.19.020 (child support economic table); Graham, 159 Wn.2d at 627.

[8] RCW 26.19.020, .065.

[9] RCW 26.19.080(1).

[10] RCW 26.19.011(8); Graham, 159 Wn.2d at 627.

[11] RCW 26.19.011(4), (8); Graham, 159 Wn.2d at 627.

[12] RCW 26.19.075(d).

If the court considers a deviation based on the residential schedule, it must follow a specific statutory analysis that takes into account whether and how a deviation will affect both the parent receiving the support transfer payments and the parent making the support transfer payment. The statute allowing for deviation provides:

> Residential schedule. The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.[13]

This same process applies to a 50/50 shared residential schedule. In Graham, our Supreme Court explained, "[T]he plain text of RCW 26.19.075 gives the trial court discretion to deviate from the basic child support obligation based on a variety of factors, one of which is the amount of residential time the children spend with the parents."[14] It further held that, because of the ability to deviate based on the facts of a particular case, "a specific formula is neither necessary nor statutorily required to ensure the parents' child support obligation is properly allocated."[15] This court held that, in a 50/50 shared residential context, "a trial court must calculate the basic child support amount and may then deviate from that amount based on the amount of residential time spent with the obligor parent, pursuant to RCW 26.19.075, so long as doing so will not

---

[13] Id.

[14] Graham, 159 Wn.2d at 636.

[15] Id.

5

result in insufficient funds in the household receiving the support to meet the needs of the children while they are residing in that household".[16] The Supreme Court affirmed.[17]

Sara contends the trial court erred when it awarded her less than the standard child support calculation. She contends the court failed to engage in the required deviation analysis, resulting in a child support order that left her with insufficient funds to meet the needs of her children. We agree.

The trial court properly determined the standard support obligation as $1,866.00, or $933.00 per child, and allocated 75 percent of the support obligation ($1,399.50) to Shata, and the remaining 25 percent to Sara ($466.50). Even though the court correctly identified the standard support obligation, the court concluded the standard calculation did not apply in this case, "because there is no primary residential parent who is entitled to support based upon the [s]tandard [c]alculation."[18] While the statute explicitly allows the court to deviate from the standard calculation based on residential time spent with the obligor parent, the court "may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child."[19]

Instead of engaging in the required statutory analysis to determine the propriety of a downward residential deviation, the trial court simply ordered Shata to pay Sara

---

[16] State ex rel. M.M.G. v. Graham, 123 Wn. App. 931, 941, 99 P.3d 1248 (2004), aff'd, 159 Wn.2d at 636.

[17] Graham, 159 Wn.2d at 636.

[18] Clerk's Papers at 77.

[19] RCW 26.19.075(d).

$500 per month. The court stated the $500 transfer payment did not constitute a deviation, because of the equal residential care each parent provided:

> The [s]tandard [c]alculation does not apply to this case[ ] because the parties have a 50/50 shared residential schedule where each parent provides an equal amount of residential care for the children. Therefore, the court's equal allocation of the [b]asic [s]upport [o]bligation between the two households does not constitute a deviation.[20]

There is no indication in the record on appeal that the trial court gave any consideration to whether the reduction in transfer payment resulted in insufficient funds to meet the children's needs.

The trial court erred in concluding the standard calculation did not apply to a shared residential schedule. The trial court also failed to consider whether its support order, which amounted to a downward deviation, would leave Sara's household with insufficient funds. The court's failure to apply the standard calculation, as well as its failure to conduct the analysis required under RCW 26.19.075(d),[21] amounted to a misapprehension of the law.[22]

---

[20] Clerk's Papers at 77.

[21] We need not address Sara's additional argument that the court also erred by failing to justify with written findings what amounted to a downward deviation from the standard support calculation as required by RCW 26.19.075(3). On remand, the trial court will give due consideration to any requirements of RCW 26.19.075(3).

[22] We recognized in Graham that the shared residential arrangement requires the parents to each provide a household to not just one, but to two or more children. Dividing the basic child support by the number of children and splitting it between the parents would qualitatively reduce the amount of funds available to the children in the household that is less financially well off. Graham, 123 Wn. App. at 941. "This would often result in not meeting the legislature's intent to satisfy the basic needs of the children and to provide additional financial support commensurate with the parents' income, resources and standard of living." Id. at 940 (citing RCW 26.19.001).

Shata responds the trial court did not err, as chapter 26.19 RCW is silent regarding the process for determining child support where each parent has the children exactly half the time. As noted above, the Supreme Court rejected a similar argument in Graham, where the obligor parent shared the residential schedule equally with the obligee parent.[23]

Accepting Shata's argument would require us to ignore the holding of Graham, as well as the clear statutory language requiring courts to follow the same process for all determinations of child support. To the extent Shata advocates for equitable relief from the statute, he cites no persuasive legal authority to support his argument.

We vacate the order of child support and remand for further proceedings consistent with this opinion. During oral argument, Sara argued that Shata should be precluded from pursuing a deviation on remand. Shata conceded that he had not sought a deviation at trial, although Sara had advanced the argument that he was required to request a downward deviation. The parties have not briefed the scope of the remedy available after vacation of an order of child support. The trial court on remand will be in the best position to consider any arguments on this issue.

---

[23] 159 Wn.2d at 628. In Graham, the obligor parent asked the court to reduce his support obligation to account for his shared residential burden, and urged the court to follow the Arvey formula in the absence of specific direction from the legislature regarding shared residential schedules. Id. at 633-36 (citing In re Marriage of Arvey, 77 Wn. App. 817, 825-26, 894 P.2d 1346 (1995)). The Arvey formula takes each parent's support obligation and divides it in half to account for a split residence schedule (i.e., where each parent has full residential time with only one of the two children, rather than split residential time with both children). Id. at 626, 633-36; Arvey, 77 Wn. App. at 825-26.

*Attorney Fees*

Sara requests attorney fees under RAP 18.1(a) and RCW 26.09.140. Sara argues her disparate earning capacity entitles her to attorney fees. To support her argument, she points to Shata's maintenance obligation, as well as to the fact that she has not had time to get her real estate business off the ground. Sara submitted a financial affidavit to support her request, as required under RAP 18.1(c). Her declaration documents her need and inability to pay, and therefore, we grant Sara's request for attorney fees on appeal, upon her timely compliance with RAP 18.1(d).

WE CONCUR:

Cox, J.

Becker, J.